**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TAMIKA RIVERS, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 24-6368 (MAS) (TJB) |
|  | **MEMORANDUM OPINION** |
| ULTIMATE TRANSPORTATION, LLC, *et al.*, | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiffs Tamika Rivers, Carieann Knucken, Kelly Thomas, and Michael Rico's (collectively, "Plaintiffs") Motion for Default Judgment (the "Motion for Default Judgment"). (ECF No. 10.) Defendants Ultimate Transportation, LLC ("Ultimate Transportation")[1] and Dennis Liberti ("Liberti") (collectively, "Defendants") did not oppose. After careful consideration of Plaintiffs' submission, the Court decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons set forth below, the Court enters default judgment in part against Liberti.

**I.    BACKGROUND**

On May 23, 2024, Plaintiffs, full-time employees of Defendants, filed a Complaint (the "Complaint") against Defendants. (ECF No. 1.) After Defendants failed to file an answer, or

---

[1] This Court will issue an Order to Show Cause as to Plaintiffs' service on Ultimate Transportation. As such, the below analysis will strictly focus on Liberti.

otherwise respond to the Complaint, the Clerk of Court entered default against Defendants, upon Plaintiffs' request. (ECF No. 5.)

On December 17, 2024, this Court denied Plaintiffs' first motion for default judgment (ECF No. 6) because Plaintiffs did not file a brief pursuant to Local Civil Rule 7.1(d)(1) (the "December 2024 Order"). (Dec. 2024 Order, ECF No. 7.) The Court gave Plaintiffs twenty-one (21) days from the entry of the December 2024 Order to file a renewed motion for default judgment. (*Id.*)

Plaintiffs did not file the subject Motion for Default Judgment until February 26, 2025. (*See* Mot. for Default Judgment, ECF No. 10.)[2]

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 55[3] authorizes the Court to enter default judgment "against a properly served defendant who fails to file a timely responsive pleading." *La. Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (citing Fed. R. Civ. P. 55(b)(2)); *Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). Entry of default judgment is left to the district court's discretion. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). Because entry of default judgment does not resolve a plaintiff's claims on the merits, it is a disfavored remedy. *See Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *2 (D.N.J. May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Three analyses guide the Court's discretion. *See Victory's Dawn, Inc. v. Clemons*, No. 21-9744, 2022 WL 3402491, at *2 (D.N.J. Aug. 12, 2022). First, where a defendant fails to

---

[2] The Court warns Plaintiffs against filing untimely motions.

[3] References hereinafter to "Rule" or "Rules" refer to Federal Rules of Civil Procedure.

respond to a complaint, the Court must ensure that the plaintiff properly served the defendant. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985). Second, the Court must ensure that "the unchallenged facts" in the complaint give rise to a "legitimate cause of action." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (quoting *DIRECTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)). In conducting that assessment, the Court assumes as true all allegations in the complaint, except legal conclusions and allegations regarding damages. *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165, n.6 (3d Cir. 2005) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). Third, the Court must determine whether default judgment is appropriate by weighing three factors: "(1) whether the defaulting party has a meritorious defense; (2) the prejudice suffered by the plaintiff seeking default; and (3) the defaulting party's culpability in bringing about default." *Trs. of UFCW Loc. 152 Health & Welfare Fund v. Avon Food, Inc.*, No. 17-2178, 2018 WL 372167, at *3 (D.N.J. Jan. 11, 2018) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987)).

### III.    DISCUSSION

#### A.    Service

The Court first considers whether Plaintiffs properly served Liberti. *See Gold Kist*, 756 F.2d at 19. Rule 4 governs service of process and provides that service is proper when a nonparty "leaves a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B). To that end, Plaintiffs filed a return of service demonstrating that a process server successfully served Liberti by leaving a copy of the Summons, Complaint, and additional documentation with his "mother" who resides with Liberti at 1 Rose Court, Warren, New Jersey. (Liberti Return of Serv.,

ECF No. 3.) Nothing in the record suggests that service was improper. The Court therefore concludes that Plaintiffs properly served Liberti per Rule 4(e)(2)(B).

B.     **Causes of Action**

Having concluded that service was proper, the Court next considers "whether the moving party's complaint establishes a legitimate cause of action." *La. Counseling*, 543 F. Supp. 2d at 365. Here, Plaintiffs assert claims against Liberti for: (1) a violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"); (2) a violation of the New Jersey Wage Payment Law, N.J.S.A. § 34:11-4, *et seq.* ("NJWPL"); (3) a violation of the New Jersey Wage and Hour Law, N.J.S.A. § 34:21-1, *et seq.* ("NJWHL"); (4) violations of the New Jersey Conscientious Employee Protection Act, N.J.S.A. § 34:19-1, *et seq.* ("CEPA"); (5) a violation of the New Jersey's Wiretapping Statute, N.J.S.A. § 2A:156A-24; (6) tortious invasion of privacy; and (7) intentional infliction of emotional distress. (*See generally* Compl.; Pls.' Moving Br., ECF No. 10-1.)[4]

1.     **FLSA (Count One) and NJWHL (Count Three)**

First, Plaintiffs assert Liberti violated the FLSA and NJWHL. (Pls.' Moving Br. 1, 5.) Plaintiffs insufficiently pleaded these claims.

"'The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)). Under the FLSA, employers are required "to pay their employees at least a specified minimum hourly wage for work performed, 29 U.S.C. § 206, and to pay one and one-half times the employee's regular

---

[4] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiffs assert claims under a federal statute, the FLSA, 29 U.S.C. § 216(b), *et seq.* (Compl. ¶ 2.) Supplemental jurisdiction exists over Plaintiffs' state law claims because they are related to and form part of the same controversy as the federal claims. 28 U.S.C. § 1367(a).

rate of pay for hours worked in excess of forty hours per week, 29 U.S.C. § 207." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003).[5]

The NJWHL mirrors its federal counterpart. *See* N.J.S.A. §§ 34:11-56a; 34:11-56a4 (requiring employers to pay their employees at least the federal minimum hourly wage rate set by the FLSA and at least time and a half for working in excess of forty hours a week); *Nieves v. Top Notch Granite & Marble LLC*, No. 10-1589, 2011 WL 2937352, at *3 (D.N.J. July 19, 2011) (citing *Crisostomo v. Exclusive Detailing, Inc.*, No. 08-1771, 2010 WL 2640183, at *5 (D.N.J. June 28, 2010)) (finding that the NJWHL is analogous to the FLSA and therefore "interpretations construing FLSA are applicable"). The Court therefore considers Plaintiffs' FLSA and NJWHL claims together.

Here, Plaintiffs insufficiently allege that Liberti violated the FLSA and NJWHL. Plaintiffs instead focus their claims on Ultimate Transportation. Specifically, Plaintiffs allege that Ultimate Transportation, not Liberti, violated the FLSA's minimum wage mandate by failing to pay Plaintiffs altogether for the work that they performed from October 9 to October 23, 2023 and for the work they performed between November 20, 2023 and their respective terminations. (Compl. ¶¶ 22, 32, 37, 86, 88, 110, 111, 116.) Moreover, Plaintiffs allege that Ultimate Transportation, not Liberti, failed to pay them overtime despite Defendants hiring Plaintiffs

---

[5] For purposes of this analysis, Liberti, Ultimate Transportation's owner, President, and Plaintiffs' supervisor (Compl. ¶ 12), is considered an employer under the FLSA. *See* 29 U.S.C. § 203(d) (stating an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee"); *Qu Wang v. Fu Leen Meng Rest. Ltd. Liab. Co.*, No. 16-8772, 2018 WL 1027446, at *3 (D.N.J. Feb. 23, 2018) (finding the defendants to be "employers" under the FLSA where the complaint alleged they were the "owners and operators[,] . . . supervised and controlled employee work schedules and conditions of employment, determined the rate and method of payment, and maintained employment records"); *Delgado v. Auto Gallery LLC*, No. 20-18593, 2021 WL 5864064, at *3 (D.N.J. Dec. 10, 2021) (same).

5

full-time and making Plaintiffs work in excess of 40 hours per week. (*Id.* at ¶¶ 20, 22, 32, 44, 62, 69, 80, 89, 106, 116; Pls.' Moving Br. 5.) The Court, accordingly, finds that Plaintiffs fail to state plausible claims under FLSA and NJWHL against Liberti.

        2.      **NJWPL (Count Two)**

Next, Plaintiffs assert Liberti violated the NJWPL. Plaintiffs insufficiently pleaded this claim.

The NJWPL provides that "every employer shall pay the full amount of wages due to his employees at least twice during each calendar month" and that an employer may not "withhold or divert any portion of an employee's wages" except under specifically defined circumstances, which do not apply here. N.J.S.A. §§ 34:11-4.2, 34:11-4.4.[6]

Here, Plaintiffs insufficiently allege that Liberti violated the NJWPL. Plaintiffs, again, focus their allegations instead on Ultimate Transportation. Specifically, Plaintiffs allege that Ultimate Transportation, not Liberti, withheld payments altogether for the October 9 to October 23, 2023 pay period and all pay periods after November 20, 2023. (Compl. ¶¶ 96-7, 101.) The only factual allegations Plaintiffs make against Liberti for this claim are that: (1) Plaintiffs complained to Liberti; (2) Liberti baselessly accused Plaintiffs of illegal acts; (3) Liberti covertly recorded Plaintiffs in the office and via their computers; and (4) Liberti locked Plaintiffs out of their work computers. (*Id.* at ¶¶ 97, 98; Pls.' Moving Br. 6.) Plaintiffs, however, fail to cite to any authority as to how such facts support a NJWPL claim. The Court, accordingly, finds that Plaintiffs fail to state a plausible claim under the NJWPL against Liberti.

---

[6] Like the FLSA and NJWHL, the NJWPL defines "employer" to include an individual with control over the entity or entities employing the plaintiff. N.J.S.A. § 34:11-4.1(a); *Salins v. EMR Tech. Sols., Inc.*, No. 21-20125, 2023 WL 7386844, at *7 (D.N.J. Nov. 8, 2023). As such, Liberti is considered an employer under the NJWPL.

3.      **CEPA (Counts Four and Five)**

Next, Plaintiffs allege Liberti violated the CEPA by: (1) retaliating against Plaintiffs (Count Four); and (2) aiding and abetting Ultimate Transportation in its violation of the CEPA (Count Five). Plaintiffs sufficiently pleaded Count Four and insufficiently pleaded Count Five.

CEPA provides:

> an employer cannot take any retaliatory action against an employee because the employee does any of the following: discloses, or threatens to disclose . . . the policy or practice of the employer . . . that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law.

N.J.S.A. 34:19-3. CEPA requires that a plaintiff must demonstrate: (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J. Stat. Ann. 34:19–3c;[7] (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. *Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003) (citations omitted). CEPA covers employee complaints about activities the employee reasonably believes are: (1) in violation of a specific statute or regulation; (2) fraudulent or criminal; or (3) incompatible with policies concerning public health, safety or welfare or the protection of the environment. *See Estate of Roach v. TRW, Inc.*, 754 A.2d 544, 549 (N.J. 2000).

Here, Plaintiffs sufficiently allege that Liberti retaliated against Plaintiffs pursuant to CEPA. Specifically, Plaintiffs allege in their Complaint: (1) Plaintiffs held a reasonable and

---

[7] "Whistle-blowing activities include 'a notification, or threat of notification, to an outside agency or a supervisor.'" *Berndt v. Heyco Prods. Corp.*, No. 22-1300, 2025 WL 1694369, at *8 (D.N.J. June 17, 2025) (quoting *Caldwell v. Amazon.com Servs. LLC*, No. 22-7251, 2024 WL 4589776, at *5 (D.N.J. Oct. 28, 2024)).

genuine belief that Ultimate Transportation and Liberti covertly recorded Plaintiffs' private and personal conversations in violation of the law;[8] (2) Plaintiffs performed whistle-blowing activities, such as "complaining to Liberti about their reasonable, genuinely held belief that [Ultimate Transportation and Liberti] covertly recorded Plaintiffs' private and personal conversations"; (3) Defendants retaliated against Plaintiffs by firing "Thomas and another employee who complained, withholding compensation, harassing Plaintiffs by phone and text message, accusing Plaintiffs of illegal acts without any basis, and locking Plaintiffs out of their work accounts"; and (4) Defendants took adverse employment actions "[i]n response to Plaintiffs' whistle blowing." (Compl. ¶¶ 34-37, 119-120; Pls.' Moving Br. 5-6); *Chun v. Sushi Maru Express Corp.*, No. 17-6411, 2018 WL 3158815, at *4-5 (D.N.J. June 28, 2018) (finding plaintiff sufficiently alleged a CEPA claim for retaliation when the complaint stated in part that plaintiff reasonably believed that defendants violated regulations and laws, plaintiff voiced her concerns to defendants, and defendants terminated plaintiff because of plaintiff's whistle-blowing activity); *Brown v. City of Long Branch*, 380 F. App'x 235, 239 (3d Cir. 2010) (finding plaintiff sufficiently alleged a CEPA claim for retaliation when the complaint stated in part that plaintiff believed defendant violated his right to medical privacy, plaintiff complained to a supervisor, and defendant terminated plaintiff only once he began to complain). The Court, accordingly, finds that Plaintiffs state a plausible claim under the CEPA against Liberti.

Next, Plaintiffs allege that Liberti aided, abetted, and substantially assisted Ultimate Transportation's "retaliation against Plaintiffs as a result of their blowing the whistle about

---

[8] "[A] CEPA plaintiff need not cite any specific statute, rule or regulation which was allegedly violated when disclosing employer wrongdoing or even when filing a CEPA action." *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 93 n. 4 (3d Cir. 1999) (quotation marks and citation omitted).

[Ultimate Transportation's] recording of Plaintiffs in the workplace and via their computers." (Compl. ¶ 125.) The CEPA, however, does not include relief from those who aid and abet improper retaliatory employment actions. *See* N.J.S.A. 34:19-3; *Jewett v. IDT Corp.*, No. 04-1454, 2007 WL 9782910, at *3 (D.N.J. Nov. 5, 2007) (same). Because Plaintiffs do not provide any contradictory authority (*see generally* Pls.' Moving Br.), this Court finds Plaintiffs do not sufficiently plead a legitimate cause of action against Liberti for aiding and abetting Ultimate Transportation in violation of the CEPA.

### 4. New Jersey Wiretapping Statute (Count Six)

Next, Plaintiffs allege that Liberti violated the New Jersey Wiretapping Statute, N.J.S.A. § 2A:156A-24. (Compl. ¶¶ 128-130.) Plaintiffs sufficiently pleaded this claim.

The New Jersey Wiretapping Statute states in relevant part: "any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this Act shall have a civil cause of action against any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication." N.J.S.A. 2A:156A-24.

Here, Plaintiffs allege that Liberti intercepted, disclosed, and/or used Plaintiffs' wire, electronic, and oral communications by installing hidden audio recorders throughout the office and installing surveillance software onto Plaintiffs' computers without license, privilege, or the consent of Plaintiffs to record Plaintiffs' private and personal conversations. (Compl. ¶¶ 34-35, 75, 129; Pls.' Moving Br. 6.) The Court, accordingly, finds that Plaintiffs state a plausible claim under the New Jersey Wiretapping Statute against Liberti.

### 5. Tortious Invasion of Privacy (Count Seven)

Next, Plaintiffs allege that Liberti tortiously invaded their privacy. Plaintiffs insufficiently pleaded this claim.

New Jersey recognizes four invasion of privacy torts: "(1) unreasonable intrusion upon seclusion; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to one's private life; and (4) false light invasion of privacy." *Dessources v. Manning*, No. 18-9324, 2021 WL 3879094, at *14 (D.N.J. Aug. 31, 2021) (quoting *Jevic v. Coca Cola Bottling, Co. of N.Y., Inc.*, No. 89-4431, 1990 WL 109851, at *8 (D.N.J. June 6, 1990)). "The tort of intrusion upon seclusion imposes liability on [o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another . . . if the intrusion would be highly offensive to a reasonable person." *Corson v. Accts. Receivable Mgmt., Inc.*, No. 13-1903, 2013 WL 4047577, at *10 (D.N.J. Aug. 9, 2013) (quotation marks and citations omitted). "To state a claim for intrusion upon seclusion, a plaintiff must allege that the intrusion 'would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object.'" *Id.* (quoting *Stengart v. Loving Care Agency, Inc.*, 990 A.2d 650, 660 (D.N.J. 2010)).

Here, Plaintiffs insufficiently allege that Liberti invaded Plaintiffs' privacy through intrusion upon seclusion. Plaintiffs do not plead any facts to adequately allege that Liberti intentionally intruded upon Plaintiffs' seclusion and private concerns. (*See generally* Compl.) Plaintiffs instead solely allege facts regarding Ultimate Transportation. (*See* Compl. ¶ 132 ("By installing hidden audio recorders throughout the office and installing surveillance software onto Plaintiffs' computers without license, privilege, or the consent of Plaintiffs to record Plaintiffs' private and personal conversations, [Ultimate Transportation] intentionally intruded upon the seclusion and private concerns of Plaintiffs in a manner which would be highly offensive

to a reasonable person.").) The Court, accordingly, finds that Plaintiffs fail to state a plausible claim for invasion of privacy against Liberti.

### 6. Intentional Infliction of Emotional Distress (Count Eight)

Lastly, Plaintiffs allege that Liberti intentionally inflicted emotional distress upon them. Plaintiffs insufficiently pleaded this claim.

To state a claim for intentional infliction of emotional distress, a plaintiff must adequality allege that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions were the proximate cause of the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff is so severe that no reasonable person would be able to endure it. *Gattas v. City of Jersey City*, No. 07-4242, 2010 WL 892187, at *7 (D.N.J. Mar. 5, 2010) (citing *Buckley v. Trenton Saving Fund Soc.*, 544 A.2d 857 (N.J. 1988)).

Here, Plaintiffs insufficiently allege that Liberti intentionally inflicted emotional distress. Plaintiffs do not plead any facts to demonstrate Liberti acted intentionally or recklessly, not to mention, extremely or outrageously. (*See generally* Compl.) Plaintiffs, again, solely allege facts regarding Ultimate Transportation. (*See* Compl. ¶ 135 ("By installing hidden audio recorders throughout the office and installing surveillance software onto Plaintiffs' computers without license, privilege, or the consent of Plaintiffs to record Plaintiffs' private and personal conversations, [Ultimate Transportation] engaged in extreme and outrageous conduct in reckless and deliberate disregard of the high probability that severe and unreasonable emotional distress would ensue from such conduct, or with intention to produce such emotional distress.").) The Court, accordingly, finds that Plaintiffs insufficiently state an intentional infliction of emotional distress claim against Liberti.

### C. Default Judgment

Because Plaintiffs sufficiently pleaded Counts Four and Six, the Court will next determine whether default judgment is appropriate for such claims. In doing so, the Court reviews the relevant factors. *Allaham v. Naddaf*, 635 F. App'x 32, 36 (3d Cir. 2015). *First*, the Court examines the prejudice Plaintiffs will endure absent default judgment. Unequivocally, the prejudice is great. It has been over sixteen months since Plaintiffs served Liberti, and Liberti has failed to contact Plaintiffs, the Court or otherwise defend his case. (*See generally* Compl.; Pls.' Moving Br. 4.) As a result of Liberti's failure to respond, Plaintiffs: (1) are unable to move forward with litigation; (2) have incurred additional costs, including the costs of filing and briefing this Motion for Default Judgment; and (3) experience delayed relief. *See Trs. of Loc. 7 Tile Indus. Welfare Fund v. Giacomelli Tile, Inc.*, No. 11-01846, 2012 WL 32134, at *3 (D.N.J. Jan. 5, 2012) (entering default judgment in part because defendants prejudiced plaintiffs when defendants failed to respond to the pleadings for over eight months, failed to contact the Court or defend their case, prohibited plaintiffs from moving forward with the litigation, and forced plaintiffs to incur additional costs). As such, Plaintiffs will endure prejudice if the Court does not enter default judgment.

*Second*, the Court examines whether Liberti has a litigable defense. Because Liberti has failed to respond to the Complaint, the Court cannot find that Liberti has any meritorious defenses and nothing in the record indicates otherwise. *United States v. Schambach*, No. 20-2650, 2021 WL 3486936, at *4 (D.N.J. Aug. 9, 2021) (stating because defendant has "failed to respond to the [c]omplaint, the Court cannot find that [d]efendant has any meritorious defenses and nothing in the record indicates any possible defenses"); *Electromagnetic Techs. Indus., Inc. v. CCOM*, No. 13-3981, 2015 WL 3879691, at *2 (D.N.J. June 22, 2015) (stating "given that [d]efendant has

failed to appear or plead in this action, the Court finds no basis for [d]efendant to claim a meritorious defense"). As such, Liberti does not have a litigable defense.

*Third*, the Court determines whether Liberti's delay is due to culpable conduct. To determine whether a defendant's delay is due to culpable conduct, courts consider whether the defendant "acted willfully or in bad faith." *See Mycone Dental Supply Co., Inc. v. Generic Mfg. Corp.*, No. 22-5791, 2023 WL 3742827, at *6 (D.N.J. May 31, 2023) (quoting *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982)). The Court presumes Liberti is culpable for his failure to answer where, as here, Liberti has not demonstrated his failure to file an answer was not willfully negligent. *See Giacomelli Tile, Inc.*, 2012 WL 32134, at *3 (entering default judgment in part when "[d]efendants are presumed to be culpable for their failure to answer where, as here, there is nothing before the Court to show that [d]efendants' failure to file an answer was not willfully negligent"); *Prudential Ins. Co. of Am. v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) (stating "there was nothing before the Court to suggest that anything other than [defendant's] willful negligence caused her failure to file an answer, and she was therefore culpable"). As such, Liberti's delay is due to his culpable conduct.

Accordingly, the Court will enter default judgment against Liberti as to liability for Counts Four and Six.

## IV. CONCLUSION

For the reasons set forth above, the Court enters default judgment against Liberti as to Counts Four and Six. This Court shall defer the issue of damages pending a determination on the Order to Show Cause as to Ultimate Transportation. An order consistent with this Memorandum Opinion will follow.

Dated: 9/29/25

*/s/ Michael A. Shipp*
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE